No. 639

First Circuit

———

WACO v. HILLYER-DEUTSCH-EDWARDS, INC.

———

(June 9, 1930. Opinion and Decree.)
(June 30, 1930. Rehearing Refused.)

———

Fern W. Wood, of Leesville, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

MOUTON, J. The district judge has rendered herein the following opinion:

"The plaintiff, George Waco, claims that he received a hernia while loading timber for the defendant company, on September 7, 1928.

"The defendant, Hillyer-Deutsch-Edwards, Inc., denied any injury on the date mentioned, but alleged that plaintiff suffered from a hernia long prior to the time that he claims he was hurt.

"The plaintiff's testimony (Tr. 1, 2) to the effect that he received the hernia on September 7, 1928, is substantiated only by the testimony of his wife, who said that her husband had no hernia prior to the time mentioned (Tr. 24).

"This testimony is contradicted by the conduct and statements of the plaintiff himself, by strong circumstantial evidence, and by two witnesses whom I believe.

"The plaintiff admitted that he never reported the accident to any of the company officials, and never told anybody about getting hurt except Sam Randle (Tr. 6, 8).

"In August, 1929, about a year after the alleged injury, the plaintiff was discharged, and during all of that time he never made any complaint to any person except one of the company's doctors, who has been dead almost a year. (Tr. 7, 48) Notwithstanding plaintiff's testimony to the effect that he stayed in bed two or three weeks after the accident (Tr. 10, 11), and that the doctors told him that he could do light work within two or three weeks after the accident, the record shows that between September 1, 1928, and August 5, 1929, plaintiff lost only seven days in September, beginning with September 15, and four days in January, 1929, beginning on the 11th, and that he lost no time at all on the date

he alleged he was injured, nor for a week thereafter.

"As noted above, plaintiff was off a week in September, 1928, beginning on the 15th, but on this occasion, when he left work, he reported to his foreman and to an inspector that he was leaving because he was sick (Tr. 3). He made the same statement to Mr. Kennedy, the yard foreman (Tr. 6). About this time McKinley Taylor saw George Waco in Dr. Scott's office, but at that time Waco made no complaint about the hernia, and when asked if Waco seemed to be suffering, the witness said, 'About like he is now, he wasn't making any cry' (Tr. 17). On this occasion Taylor said he heard Dr. Scott ask the plaintiff how his stomach was acting (Tr. 18).

"For about a year subsequent to the date of the alleged injury plaintiff continued to do the same class of work—loading lumber—that he had been doing for about two years. The two men who worked with him in loading lumber and timber on cars for approximately two years, testified that they never saw him get hurt, never heard about it, and that they never heard the plaintiff complain of being hurt. (Tr. 28, 29) Kennedy, the yard foreman of the defendant company, who had his office right on the car line, where the cars were being loaded by the plaintiff cars, during a good part of the time being right in front of the office, testified that no complaint of any injury was ever made by the plaintiff to him (Tr. 33, 34); that he saw the plaintiff working regularly; never noticed anything unusual about him; and that the plaintiff never complained of any suffering (Tr. 34).

"The plaintiff testified that Sam Randle, one of the men with whom the plaintiff worked as a member of the loading crew for nearly two years, knew about the injury, and that on one occasion the plaintiff took Randle in the woods and showed him the hernia (Tr. 27). This Sam Randle denied positively (Tr. 27, 28.)

"Dr. Cather testified that in the latter part of July, 1929, plaintiff came to him to have a rash on his legs treated, and at that time the witness noticed the hernia on the plaintiff, and asked him about it, whereupon the plaintiff said that he had had it for four or five years, and that it did not bother him (Tr. 38, 39).

"The plaintiff testified that on September 7, 1928, Dr. Scott gave him a prescription for some salve to use on his hernia, and at the same time had a drug store send the plaintiff a truss, to be worn to hold the hernia (Tr. 2, 7, 11, 12, 13). Dr. Cather examined the records in both of the drug stores in Oakdale, where plaintiff testified that he got the prescription filled, and the truss, and neither of the drug stores had any record of any prescription filled for the plaintiff on or about the time alleged, nor did either of the said drug stores have any record of any truss that was furnished the plaintiff (Tr. 40).

"The plaintiff denied that he had ever been treated by Dr. Cather for any rash or skin trouble (Tr. 8, 45), and as noted above, Dr. Cather recalled distinctly that he had treated plaintiff for a rash on his legs.

"The testimony of Henry Mitchell (Tr. 19, 20), and Elijah Holmes, (Tr. 21, 22), to the effect that in August and September they saw the plaintiff in bed for two or three weeks has already been shown to be untrue as far as the length of time is concerned, for plaintiff was never absent from his work more than one week at the time during the whole time he was with the defendant company. It is possible, however, that these two witnesses did see the plaintiff in bed with a hernia, but if they did, I am convinced it was an old hernia, acquired long before the time plaintiff complains about.

"The record above quoted convinces me that the plaintiff has not made out his case."

In concluding the opinion, the district judge said:

"The record above quoted convinces me that the plaintiff has not made out his case."

After carefully reading every line of the evidence, we have likewise reached the same conclusion.

Judgment affirmed.